[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PETITION FOR A WRITOF HABEAS CORPUS
I
The petitioner, Melvin Perry, is currently serving a sentence of twenty years imprisonment, execution suspended after fifteen years, for Manslaughter in the First Degree, in connection with CT Page 3997 the death of Doreen Ratcliff. Ms. Ratcliff was killed by gunshots on or about September 29, 1992. The petitioner was charged with her murder, and following a hearing on February 4, 1993 the court (Hadden, J.) found probable cause that Ms. Ratcliff was murdered, and by the petitioner. Subsequently, petitioner entered a plea of guilty to the reduced charge of Manslaughter in the First Degree and was sentenced on January 29, 1994. His plea of guilty was entered pursuant to the Alford Doctrine, North Carolina v.Alford, 400 U.S. 2, 27 L.Ed.2d 162, 91 S.CT 160 (1970).
Petitioner has petitioned for a writ of habeas corpus, complaining that his incarceration is illegal, claiming actual innocence based on newly discovered evidence. incarceration is illegal, claiming actual innocence based on newly discovered evidence. A hearing was held on November 7 and 14, 1997 at which testimony was had from several witnesses, and a transcript of the probable cause hearing, a police report and two statements by petitioner to police were entered into evidence.
Petitioner's claim is founded on the assertion of Melanie Riley that one Eric Wiley had admitted to her on more than one occasion that he, not petitioner, had fired the shots that killed Doreen Ratcliff.
 II
The factual background leading to this petition is as follows:
On or about September 29, 1992, shortly after nine p. m., the body of Doreen Ratcliff was found lying on Leeder Hill Road in the town of Hamden. On the following day, the petitioner telephoned the New Haven police to report that an inspection of a brown Cadillac owned by petitioner revealed blood stains in the vehicle's interior. Ms. Ratcliff and petitioner had an on-going romantic relationship lasting some four years. He supplied her with money, as much as $150 per week. The petitioner and Ms. Ratcliff had disagreements, on occasion culminating in an exchange of blows. Ms. Ratcliff had a penchant for taking petitioner's car and had her own set of keys made. This concerned petitioner, as Ms. Ratcliff had no driver's license. Ms. Ratcliff used drugs and would at times take the car to "hustle" (engage in prostitution) to raise money.
In petitioner's initial statement to police he claimed that CT Page 3998 he had last seen Ms. Ratcliff shortly after nine p. m. the previous night. He had gone to visit her at her residence and she insisted on taking his car. They went out together and she dropped him off near his home. He went to his home and remained, worrying about his car. Between eleven p. m. and midnight he looked out and observed the car parked on the street. The next morning he went to work in another car belonging to him. It was not until he returned home in the afternoon that he went to the first car and observed the blood. Petitioner, when asked by police about a scratch on his face, first explained that he'd incurred it while working on a car, then later contacted police to explain the scratching was also caused by Ms. Ratcliff. He also corrected an earlier statement that he had not entered the car on finding the bloodstains, stating he had in fact entered and on opening the passenger door was struck on the foot by a falling cigarette package which left a blood stain on his shoe.
In his testimony at the habeas hearing the petitioner stated that on the evening of September 29, 1992 he had indeed been in the brown Cadillac on Leeder Hill Road, with Ms. Ratcliff in the right front seat, Wiley and two others in the rear seat, with petitioner occupying the driver's seat. Petitioner and his companions were drinking corn liquor that night and petitioner became so intoxicated that he remembers nothing further.
As indicated, supra, petitioner was subsequently arrested, charged, pled guilty to the charge of manslaughter in the first degree, was sentenced and incarcerated.
 III
On or about October 10, 1996, Ms. Melanie Riley contacted Lieutenant Veno of the New Haven Police Department and gave a statement, asserting that on more than one occasion Eric Wiley had stated that he, not Mr. Perry, had shot Ms. Ratcliff. The state's attorney reported this development to petitioner's counsel and the instant petition was filed.
Ms. Melanie Riley testified at the habeas hearing. She stated that at the time of Ms. Ratcliff's demise, Ms. Riley was acquainted with Eric Wiley, who worked as a mechanic on her car. Shortly after Ms. Ratcliff's murder, Wiley confided that he had "done something" and that the police were questioning him. A couple of years later she and Wiley "got together" and he is the father of her five year old daughter. Wiley again discussed the CT Page 3999 incident with her. He said that he, "Tony", petitioner and Perry were seated in the Cadillac on Leeder Hill Road, petitioner in the driver's seat, Ms. Ratcliff in the front passenger seat, Tony in the left rear seat and Wiley in the right rear seat, behind Ms. Ratcliff. The group was drunk on corn liquor. Wiley told Ms. Riley that Ms. Ratcliff had spoken threateningly, that he had put a gun to her head and shot her in the back of the head, and that somebody innocent (Perry) was in jail for this. The third time Wiley mentioned the incident was around October, 1996, days before Ms. Riley reported Wiley's statements to the police. Wiley stated that at the time of the killing Perry was "out of it", so drunk he didn't know what was going on.
By October, 1996, Ms. Riley had been involved in domestic violence with Wiley. She told her social worker about Wiley's admissions and went with her to make a report to Lt. Veno.
Eric Wiley is currently incarcerated, charged with sexually molesting his and Ms. Riley's daughter. He was called as a witness at Mr. Perry's habeas hearing and was represented by counsel. Mr. Wiley, invoking his fifth amendment rights, declined to testify.
 IV
At the probable cause hearing held on February 4, 1993, Dr. Henry Lee of the state's forensic science laboratory was called to testify regarding his investigation of Ms. Ratcliff's death. Dr. Lee stated that tests of a sweatshirt worn by petitioner Perry, showed bloodstains of a blood type and antigen type consistent with the victim's blood and antigen type; that there were 13 stains on the sweatshirt, some consistent with a contact transfer, some the result of high velocity blood spatter, consistent with that caused by a gunshot. Petitioner's left shoe also was bloodstained, and tested consistent with the victim's blood and antigen type, as did a bloodstained cigarette pack. Dr. Lee also gave his opinion that a bloodstain as seen on the cigarette package would have dried and not have left a stain if dropped on a shoe some seventeen hours after liquid blood was deposited on the cigarette pack. Dr. Lee testified that atomic absorption tests on both of petitioner's hands showed the presence of both lead and barium, consistent with discharge of a firearm. Dr. Lee concluded that the trajectory of the gunshots was from left to right, that the victim was in the front passenger seat and the shooter in the driver's seat. CT Page 4000
 V
Petitioner's claim of actual innocence relies on Ms. Riley's testimony as new evidence. Our supreme court has defined new evidence as that which "is not cumulative, was not available to the petitioner at his criminal trial, and could not have been discovered by him at that time through due diligence", Miller v.Commissioner of Corrections, 242 Conn. 745, 789, fn. 29.
Prior to his conviction, petitioner chose not to reveal to the police or to his attorney that Eric Wiley had been sitting in the car with petitioner and the victim on the night of her slaying. Had he done so, those whose responsibility it was to investigate the crime and to prepare a defense might have developed information conceivably probative of petitioner's innocence or at least suggesting a role by Wiley in the slaying. This is not to say, however, that petitioner, by the exercise of due diligence would have been able to discover allegations that Wiley had confessed to have been the killer of Ms. Ratcliff. The court finds that the testimony of Ms. Riley constitutes "newly discovered evidence" for purposes of supporting petitioner's claim of actual innocence.
 VI
In Miller v. Commissioner of Corrections, supra, our supreme court has established the requisite standard of proof that must be met by a habeas petitioner who raises a claim of actual innocence.
First, taking into account both the evidence produced at the original criminal trial [here, "at the probable cause hearing"] and the evidence produced at the habeas hearing, the petitioner must persuade the habeas court by clear and convincing evidence, as that standard is properly understood and applied in the context of such a claim, that the petitioner is actually innocent of the crime for which he stands convicted.
Second, the petitioner must establish that after considering all of that evidence and the inferences drawn therefrom, as the habeas court did, no reasonable fact finder would find the petitioner guilty, Miller v. Commissioner, supra, at 791, 792.
As to the first component, the Miller court elaborates that CT Page 4001 the standard of proof, particularly as applied to a habeas claim of actual innocence, is "a very demanding standard" and one that "forbids relief whenever the evidence is loose, equivocal or contradictory", Miller v. Commissioner, supra, at 795. (citation omitted).
Measured against this standard the court finds the petitioner has failed to meet his burden of proof. The physical evidence introduced at the petitioner's probable cause hearing constituted powerful evidence of petitioner's guilt. Undoubtedly it played a role in inducing petitioner to enter a guilty plea to a charge of Manslaughter in the First Degree. Such evidence was not discredited, much less obliterated, by testimony of Ms. Riley, in that we still have the blood spatter patterns on the front passenger side of the vehicle, the blood spatter stains on the sleeves of petitioner's sweatshirt, the traces of lead and barium on petitioner's hands, the expert testimony that the trajectory of the shots fired was from left to right, from the driver's seat to the front passenger seat. We also have the petitioner's admission he was sitting in the driver's seat prior to his "blackout", as well as his admission that some of the scratching on his face had been caused by Ms. Ratcliff.
To persuade the court of his actual innocence, petitioner offers the testimony of Melanie Riley, who came forward nearly four years after the killing, after an incident of domestic violence with Mr. Wiley, he soon to be incarcerated, charged with the sexual molestation of Ms. Riley's and his five year old daughter. Even were we to believe Ms. Riley, there is no assurance that any statements allegedly made by Wiley were true. There is no corroborating evidence to support his alleged version of events. Moreover, the alleged confession by Wiley, as recounted by Ms. Riley, that he shot Ms. Ratcliff in the back of the head from the right rear seat, is contradicted by the physical evidence cited above. While petitioner, in his brief, claims that "Wiley's confession to the crime is completely consistent with the known physical evidence," the court is not so persuaded.
The evidence offered by the petitioner to support his claim of actual innocence is loose, equivocal and contradictor, v. Petitioner has failed to establish, by clear and convincing evidence, that he is actually innocent of the crime of which he stands convicted. CT Page 4002
Similarly, the petitioner has failed to establish, by clear and convincing evidence, that no reasonable fact finder, considering all the evidence in the same way that this habeas court considered it, and drawing the same inferences the habeas court drew, would find the petitioner guilty of the crime of which he stands convicted.
Accordingly, the relief sought by the petitioner is denied and the petition is dismissed.
By the Court
Downey, J.